## Stewart's Appeal.

1. A chancellor will not always order an instrument to be delivered up to be cancelled when he would refuse specific performance of the contract; he will leave the parties to their legal remedies.

2. To decree an instrument to be delivered up to be cancelled is a matter in the sound discretion of the court, and the power should not be exercised except in a very clear case.

3. Whenever an instrument exists, which may be vexatiously or injuriously used against a party, after the evidence to impeach it has been lost, or which may throw a cloud over the title, and he cannot immediately protect his right by any proceedings at law, equity will afford relief by directing the instrument to be delivered up to be cancelled, or such other decree as justice or the rights of the party may require.

March 9th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, GORDON and PAXSON, JJ. MERCUR and WOODWARD, JJ., having been of counsel in the case, did not sit.

Appeal from the Court of Common Pleas of *Luzerne county* : In Equity : Of January Term 1874, No. 318.

The bill in this case was filed November 2d 1865, by Franklin Stewart and others, against Wilson Ayer, Charles A. Lane, Elisha B. Harvey and others ; it set out :—

1. Betsey Stewart in her life was seised in fee of a tract of land in Luzerne county, containing about 285 acres, inherited from her father, Lazarus Stewart, deceased, and allotted to her by proceedings in partition of his estate ; and also by inheritance from her sister, Martha Stewart, of the undivided sixth part of another tract of 285 acres, inherited by Martha from her father, the same Lazarus Stewart, and allotted to her by the same proceedings in partition ; Betsey Stewart being so seised, was afterwards married to Alexander Jameson, and about August 20th 1806 died intestate,

leaving her husband, Alexander Jameson, to survive her ; he died about the 17th of February 1859. The plaintiffs were the children and grandchildren and heirs-at-law of Jameson and his wife, Betsey.

2. Recorded in the office for recording deeds, in Luzerne county, there was a paper, purporting to be a lease made by Alexander Jameson to Charles A. Lane, one of the defendants, of a tract of land in Luzerne county, containing 400 acres, part of which was the land above mentioned, belonging to Betsey Stewart ; said paper having been recorded on the 12th of January 1864, upon the proof of the execution, by Elisha B. Harvey, one of the defendants, and a subscribing witness to it ; the same paper was recorded in the same office on the 22d of September 1856, and in the lifetime of Jameson, upon the acknowledgment of Lane alone, no attempt having ever been made to procure Jameson's acknowledgment to it.

3. E. B. Harvey, a defendant, and subscribing witness to the lease, was interested in it.

3. A number of assignments of the lease to the defendants had been made, the first being from Lane to Ayer, dated May 17th 1855, the consideration being $55,000—subsequent assignments being for undivided interest ; the last was to Edward B. Peat for an undivided fourth. The plaintiffs averred that the considerations mentioned in the assignments were fictitious ; and that each of the assignees of the lease had notice before the respective assignments, that the lessee and his family had declared that his lease was fraudulent and void.

5. The lease was void by weakness of understanding in the lessee and fraud in obtaining it ; the lessee being at the time aged 88 years, and his mind so weakened as to be unable to comprehend the purport of the paper, &c., and Harvey and Lane imposed upon him, and kept him in ignorance of the true effect of the paper.

6, 7, 8, 9. The lease was void, from want of power in the lessee to make it, he being but tenant by curtesy, and there being no mines opened in his lifetime ; also by reason of his death ; for want of consideration ; by reason of interlineations ; erasures were made by the parties interested since its execution, the lease having always been in the possession of defendants ; and by reason of uncertainty.

10. The signature of Jameson was obtained after the day of its date ; its existence was concealed from his family. Other reasons averring fraud and that the lease was void were set out.

11. The existence of the lease on the record and in the possession and control of the defendants worked injury to the plaintiffs' rights, and prevented their making an advantageous sale of the land, &c.

The prayers were :

1. That the lease might be declared void.

[Stewart's Appeal.]

2. That it might be decreed to be delivered up to be cancelled.

3. General relief.

The lease to Lane was dated December 21st 1852; it authorized mining coal on the land for eighteen years, "to be reckoned from the taking of coal from said lot;" the rent was to be 8 cents per ton for the coal mined; Lane was to surrender the premises at the end of eighteen years, with the right to renew the lease for eight years more.

The plaintiffs are devisees under the will of Alexander Jameson, dated January 3d 1852, and proved March 8th 1860.

The answer denied the substantial allegations of the bill as to the invalidity, &c., of the lease, &c.

Replication being filed, Alexander Farnham, Esq., was appointed examiner and master.

He took a large amount of evidence as examiner. As master he made an elaborate and exhaustive report on the facts and law of the case, and reported his conclusions, viz :—

"In conclusion, I report these two propositions to be established by the evidence—the other propositions, as advanced by the plaintiffs and hereinbefore stated, not being established.

"1. That at the time of the execution of the lease in question to Charles A. Lane, Alexander Jameson was a tenant by the curtesy of an undivided portion of the lands embraced in said lease, and no mines being opened thereon, the lease is therefore void; it is void, moreover, by reason of his death.

"2. That at the time of the execution of the said lease, Alexander Jameson was, by reason of weakness of mental understanding, incompetent and unable to make contracts understandingly, and that the lease is therefore void."

Exceptions were filed to the report. The questions raised in the case do not require a statement of the finding of the master of the facts, further than appears by the foregoing statement and the opinion of the court as delivered by Elwell, P. J., of the Twenty-sixth District.

"The bill of the complainants charges that a mining-lease, made by Alexander Jameson to Charles A. Lane, dated 21st December 1852, is void as a lease, and of no validity as an encumbrance on the land therein described, and prays that it may be delivered up to be cancelled. The complainants are devisees of Alexander Jameson, who died in 1859; they are also heirs of Betsey Jameson, wife of Alexander Jameson, who died in 1806. They allege that, although the legal title to the whole tract described in the lease was vested in Alexander Jameson by the certificate of the commissioners appointed under the Acts of 1799 and 1802, he, nevertheless, was trustee of his wife as to two undivided third parts thereof, and as to those parts, at the time of executing the lease in question, he was merely tenant by the curtesy.

"It is alleged that the lease is void :—

" 1. Because of want of power on the part of the lessor to bind the heirs of his wife by an instrument operating after his death.

" 2. Because the lessor was incompetent, by reason of mental weakness, to contract.

" 3. Because the lease was procured by fraud and undue influence.

" 4. Because of alteration in the lease made since its execution.

" 5. Because of uncertainty as to the time when the term commenced; and,

" 6. Because there was no consideration to support the contract.

" These several allegations are denied in the answers of the defendants, who aver that they are bonâ fide purchasers of the interest of the lessee, and, as such, are entitled to hold as against any secret trust of which they had not notice. They also aver that possession was taken under the lease, and the contract, therefore, completely executed.

" The able and exhaustive report of the master negatives the charge of fraud in procuring the lease, and also that of alteration since its execution, and concludes, as matter of law, that the contract is not void for uncertainty nor want of consideration. But the two propositions above stated, of want of power and absence of mental capacity are affirmed by the master.

" The case is so plainly stated in the report of the master as to render unnecessary the introduction of the facts into this opinion."

After discussing the question as to Alexander Jameson's holding the title in his own right, the opinion proceeded :—

" But there are other matters to be considered in connection with the right of the claimants to a cancellation of the contract. They hold, even according to their own claim, an undivided portion of the land under the will of Alexander Jameson, dated January 3d 1852, before the execution of the lease, and proved in 1860, after the death of the testator. By the terms of the will all of the land embraced in the certificate and in the lease was devised, and has been held accordingly by the complainants. Whatever interest may have come to them by descent from Betsey Jameson has not been recognised and acted upon as distinct from, or independent of, the title devised under the will of Alexander Jameson.

" In the lease the words ' to farm let and demise,' imply a covenant against any title paramount to the lessor : 1 Wash. Real Prop. 427. The effect of which, also, is that he has a good title, and can give a free, unencumbered lease for the time demised : Id. 428. For the purpose of this part of the case, Alexander Jameson must be presumed to have known what his title was. He would not have been heard in a court of equity, asserting that he had made a lease for a greater interest than he possessed, and

[Stewart's Appeal.]

praying for relief by cancellation of his contract. The complainants represent his title, and, therefore, stand upon no higher ground than he did. If the lease is a cloud upon their title, it was created by their testator; and although their acceptance under the will might not prevent their claiming rights descending to them from their maternal ancestor, yet the lease should have existence to enable the lessee to recover damages for the breach of covenant, if any such breach has occurred. I cannot concur in the conclusion that the lease is void for want of power on the part of the lessor. The objection to its validity on the ground of uncertainty as to the commencement of the term, is fully answered in the reasons given and authorities cited by the master. It was to begin "when coal was taken" by the lessee. It is a mistaken construction of this contract to hold that it gave to the lessees an unlimited time in which to commence taking coal. As no time was specified, the law presumes that the parties intended and agreed that it should be done in a reasonable time : Ellis *v.* Thompson, 3 M. & W. 445; 2 Pars. Con. 47. * * *

"But if an instrument is void on its face it carries its own condemnation with it, and is not in any legal sense a cloud upon the title which requires the interference of a court of equity : Hotchkiss *v.* Etting, 36 Barb. (N. Y.) 45.

"The same principle applies to the allegation of want of consideration. Even if it were well founded there would be no occasion for equitable interferences. But the agreement to pay eight cents per ton for all coal mined, is a sufficient consideration to support even an unsealed instrument. Under this lease the lessees were bound, by at least an implied obligation, not only to *commence* mining coal within a reasonable time, but also to carry on and prosecute mining to a reasonable extent, all of the circumstances considered; and this they were bound to do, under the penalty of either damages or forfeiture, or both. * * *

"It is evident, from the whole tenor of the evidence, that the intellect of Mr. Jameson was impaired by age ; that his memory had failed to a considerable extent; that in conversing upon matters of the present time he would frequently intermingle transactions long past; that he sometimes forgot in regard to agreements to make purchases ; that he would frequently do the same thing over again, and also ask the same questions repeatedly ; that it had become difficult for him to compute accounts and count money. In addition to this, a number of witnesses gave it as their opinion, that from 1850 to 1853, and afterwards to the time of his death, he was unfit to do business.

"On the other hand, the testimony of the subscribing witness to the lease, a member of the bar, whose character has not been attacked, as well as that of the lessee, who was called upon other points by the complainants, proves facts which establish compe-

tency to understand and comprehend the contract on the part of the lessor. It would seem that he was familiar with coal leases, having before executed them to other parties. In addition to the testimony of the persons present at the execution of the lease, it appears that in January 1852, he executed a will under which the complainants divided his estate, and still hold title. * * * I am not satisfied that Alexander Jameson, on the 21st December 1852, was wholly incapacitated to transact business. If the lease had been in law subject to the construction contended for by the complainants, I would have no hesitancy in holding that advantage had been taken of the mental weakness of the old man, and would presume fraud. If the lessees might begin to mine when they pleased, at any remote, indefinite period, and thereafter might limit their mining to one ton a year, the contract would be so one-sided and unfair as to justify the interference of equity. But, construed according to the rule before stated, considering the probable amount of money necessary to be expended before profit could be received, the lease was a fair contract, and the consideration not so inadequate as to suggest fraud in obtaining it. * * *

" So, in the case under consideration, the circumstances are such as forbid a decree for specific performance. In addition to the old age and mental weakness of the lessor, is the further fact that the lessee, for about four years after the date of the lease, did nothing whatever under it. In May 1855 he assigned it to Wilson Ager. Ager assigned to Stephen Pierce in July 1856. Sometime in 1856 Ager sent a person upon the premises to take possession. This person began to dig, and having made a hole about ten feet square, and perhaps the same depth, he quit work, upon the service of a summons in trespass upon him at the suit of Jameson. No declaration was ever filed in the case, and no further entry upon the premises, or attempt to mine coal, has been made to this day.

" In 1857 Stephen Pierce re-assigned one-half to Wilson Ager and one-fourth to Abraham Edwards. These three-fourths are now held by B. S. Russell, John K. Grotz, and Alpheus Peet, each one-fourth, as collateral security for indebtedness of their respective assignees.

" These assignees of Lane stand upon no higher ground than he occupied. First, because the doctrine in regard to the protection of bonâ fide purchasers does not apply to lessees of land where actual and full possession has not been taken under the lease; and, second, because after the lapse of *four* years from the date of the lease, without the commencement of operations, the original lessee had no rights which he could enforce. His assignees were put upon inquiry by the facts surrounding the case, and must be presumed to have notice both of the delinquencies, and of the reasons which would prevent specific performance.

[Stewart's Appeal.]

" The bill in equity, instituted by the complainants in 1860, affords the defendants no excuse for the delay in performing the contract.    No injunction was at any time served upon them.    If they had desired to assert their rights (I speak now of the lessee and early assignees) it was incumbent upon them to show themselves ready, prompt and eager to perform their part of the contract.

" And so in regard to the complainants.    If they desired the aid of a court of equity they ought to have applied for it and pursued their remedy at an earlier day, instead of waiting thirteen years after the date of the lease, eleven years after they had knowledge of its existence, and six years after the death of the lessor.    They abandoned their bill, filed in 1860, and when they filed the present bill in 1865 had no occasion to ask for protection at the hands of the court.    From the time of obtaining the lease to filing of this bill, neither the lessee nor his assigns have made any substantial attempt at performance.    The entry that was made in 1856 or 1857 was too late to entitle the lessee to assert rights under the lease.    And, besides, the abandonment of possession, because an action of trespass was brought, and the continued omission to commence operations according to the implied requirements of the contract, amounted at the time of the filing of this bill to an abandonment of all claims under it.    The complainants, therefore, had no grounds, or at least no occasion to institute these proceedings, and their bill must, therefore, be dismissed.    But the facts being such as show that the defendants are now setting up a claim which they cannot sustain, following the precedent of Graham *v.* Pancoast, *supra,* we dismiss the bill, but refuse costs to either party."

A decree was entered in accordance with the opinion.

The plaintiffs appealed to the Supreme Court, and assigned for error the decree dismissing their bill.

*A. Ricketts,* for appellants.—If the lease is invalid, it is useless to the defendants, and they should not hold it to the annoyance and vexation of the complainants, and to the depreciation of the value of their property : Hamilton *v.* Cummings, 1 Johns. 517 ; Clousten *v.* Shearer, 99 Mass. 209 ; Williams *v.* Fitzhugh, 37 N. Y. 444; Tucker *v.* Kenniston, 47 N. H. 270 ; Kennedy *v.* Kennedy, 7 Wright 413, 417 ; 2 Story's Eq. Jur., sec. 700.

*M. F. Elliott* and *H. B. Wright* (with whom was *C. A. Buckalew*), for appellees.—The aid of a court of equity cannot be invoked to remove a cloud on a title where there is an outstanding claim or an encumbrance on it which is barred by lapse of time, and therefore cannot be enforced at law ; the question must be determined by a jury : Haines's Appeal, 23 P. F. Smith 171; Phillips's Appeal, 18 Id. 130.

Mr. Justice SHARSWOOD delivered the opinion of the court, May 10th 1875.

Upon every point on which the mining lease of December 21st 1852, by Alexander Jameson to Charles A. Lane, was attacked in the bill, the decision of the learned judge below was adverse to the appellants. Want of power in the lessor, incompetency by reason of mental weakness, fraud and undue influence, alteration in the instrument, uncertainty as to the commencement of the term, and want of consideration, are all considered and disposed of, and we think rightly disposed of. There is a clear distinction, well established as a rule in equity, between cases of specific performance and of rescission or cancellation. In many instances, the chancellor will refuse specific performance where he will also refuse to order the instrument to be delivered up to be cancelled, but leave the parties to their legal remedies: Graham v. Pancoast, 6 Casey 89. This case would certainly present itself in a different light, were it a bill by the appellee, praying specific performance and to be put into possession, under the lease. The learned judge below expressed the opinion, not only from the unusual stipulations of the lease, and the great age and mental weakness of the lessor, but also from the lapse of time without any possession taken or operations commenced under the lease, the appellant had no ground to apprehend any successful assertion of the rights of the lessee or his assignees.

It is contended, however, that admitting this to be so, the existence of the lease outstanding in the assignee, was a cloud upon the title of the appellants, preventing their sale of the property, and that a decree should have been made upon that ground of equity. Mr. Justice Strong said, very truly, in Kennedy v. Kennedy, 7 Wright 417, "there are very many cases analogous to bills of peace in which a chancellor has interfered to quiet the enjoyment of a right, or to establish it by a decree, or to remove a cloud from the title. Indeed, this is one of the well recognised branches of equitable jurisdiction, though its extent is not clearly defined." It has been maintained, that an instrument wholly void upon its face, would carry its own condemnation with it, and would not be in a proper and legal sense, a cloud upon the title: Hotchkiss v. Etting, 36 Barbour S. C. Rep. 45, and cases there cited. Mr. Justice Story considers it to be now fully established, that in such cases, courts of equity will not interpose their authority to order a cancellation or delivery up of such instruments: 2 Story Eq. Jur. 700. Chancellor Kent, however, in Hamilton v. Cummings, 1 Johns. Ch. Rep. 522, after an exhaustive examination of the English precedents says, " I am inclined to think that the weight of authority and the reason of the thing are equally in favor of the jurisdiction of the court, whether the instrument is or is not void at law, and whether it be void from matter

[Stewart's Appeal.]

appearing on its face or from proof taken in the cause, and that these assumed distinctions are not well founded." He adds : " Perhaps the cases may all be reconciled on the general principle, that the exercise of this power is to be regulated by sound discretion, as the circumstances of the individual case may dictate; and that the resort to equity to be sustained, must be expedient, either because the instrument is liable to abuse from its negotiable nature, or because the defence, not arising on its face, may be difficult or uncertain at law or from some other special circumstances peculiar to the case, and rendering a resort here highly proper and clear of all suspicion of any design to promote expense and litigation." The best expression of the rule, as it seems to me, is to be found in an opinion of the Supreme Court of Massachusetts, in Martin *v.* Graves, 5 Allen 661, by Merrick, J. " Whenever a deed or other instrument exists, which may be vexatiously or injuriously used against a party, after the evidence to impeach or invalidate it is lost, or which may throw a cloud or suspicion over his title or interest, and he cannot immediately protect or maintain his right by any course of proceedings at law, a court of equity will afford relief by directing the instrument to be delivered up and cancelled, or by making any other decree which justice or the rights of the parties may require." It is certainly a matter in the sound discretion of the court, in view of all the circumstances of the case, and the power ought not to be exercised, except in a very clear case. We think this is not such a case. To exercise it here, would be in effect to overrule the well-settled principle of chancery, which has already been adverted to, and say, that whenever a chancellor, on account of the laches of the adverse claimant, or the unreasonableness of the contract, or the mental weakness of the party, would decline to enforce the contract by a specific performance, he will order it to be delivered up to be cancelled, when it may operate to cloud the title. The lessees or their assignees ought not to be deprived of their legal remedies, and their constitutional right of trial by jury, as they would be by such a decree.

Decree affirmed and appeal dismissed, each party to pay his own costs of this appeal.