# Smith *v.* Hibbs, Appellant.

*Ejectment—Proceeding to quiet title—Act of June 10, 1893, P. L. 415.*

Where a person is in the occupancy of land under a contract based upon a valuable consideration with the owner, that the latter shall will it to the occupant, and the owner in violation of the contract conveys the land to another for life with remainder over to other parties, and then dies, the occupant may proceed under the Act of June 10, 1893, P. L. 415, and if he serves both the life tenant and the remainder-man with notice of the proceedings, a judgment in favor of the occupant in the resulting ejectment, will bar not only the life tenant, but also the remainder man, and vest a good title in fee simple in the occupant.

Argued Oct. 18, 1905. Appeal, No. 185, Oct. T., 1905, by defendant, from judgment of C. P. Greene Co., Sept. T., 1905, No 53, for plaintiff on case stated in suit of William D. Smith v. George L. Hibbs, Joseph E. Barnes and James R. Barnes. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Case stated to determine title to real estate. Before CRAWFORD, P. J.

The facts appear by the opinion of the Supreme Court.

The court entered judgment for plaintiff.

*Error assigned* was the judgment of the court.

*Thomas S. Crago,* for appellant.

*J. B. Donley,* with him *D. S. Walton,* for appellee, cited: Delaware & Hudson Canal Co. v. Genet, 169 Pa. 343.

OPINION BY MR. JUSTICE STEWART, January 2, 1906 :

This is an action for the purchase money of real estate. The defense set up is that the title tendered is not marketable. The following facts appear in the case stated, and they are all that need be repeated here.

The appellee, William D. Smith, being in possession, and claiming to be the owner of the tract of land which is the subject of the contract of purchase, in September. 1903, began a

proceeding under the Act of June 10, 1893, P. L. 415, to quiet his title to this land; in which proceeding the grantees, in a recorded deed of conveyance for the same premises, from David Shoyer, under date of November 4, 1897, were made respondents. Smith's claim of ownership of the land was as follows: David Shoyer, Smith's grandfather, in 1884, had agreed with Smith that if the latter would abandon his trade, and live with and care for Shoyer and his wife, he, Shoyer, would buy a farm on which they would live together, and " when Shoyer and his wife were gone or deceased," the farm should belong to Smith, Shoyer to make a will devising said farm to Smith in fulfillment of the contract. Pursuant to this agreement, Shoyer bought this tract of land, the parties named moved thereon, and continued to reside there together until the death of Shoyer's wife in September, 1897. Shoyer, according to his agreement, on March 16, 1887, executed a will devising the farm to Smith. Shortly after he went to reside with his son, George, and while there, on November 4, 1897, he executed and delivered a conveyance of this same land " to his son, George B. Shoyer, for life, and at his death to his wife, Elizabeth Shoyer, if she survive him, and remain his widow, to her for life, and at her death or upon remarriage, then the reversion and remainder to the use of Edward C. Shoyer and John Shoyer, children of the said George B. Shoyer and Elizabeth Shoyer, in equal shares, in fee simple, to them, their heirs and assigns forever: " which conveyance was recorded on November 26, 1897 in the recorder's office of Greene county.

Pursuant to the prayer in Smith's petition, a rule was granted on the grantees under said conveyance, to answer said petition within twenty days from service of the rule; and said parties, to wit: George B. Shoyer, Elizabeth Shoyer, Edward C. Shoyer and John Shoyer, were duly served with said rule, and with notice to appear and answer at a day named in the notice. There was no appearance to this rule, and Smith, on April 18, 1904, prayed the court to award an issue to determine the title to said tract of land; and on the same day an issue was awarded as prayed for, the said George B. Shoyer, Elizabeth Shoyer, Edward C. Shoyer and John Shoyer being made the plaintiffs, and William D. Smith, defendant in the action, which was the same day entered as an action of eject-

ment in the court of common pleas of Greene county to No. 134, May Term, 1904. The plaintiffs entered no appearance in said action, and no answer was filed by them or either of them. On November 22, 1904, the case was called, the jury sworn, and verdict rendered for the defendant for the premises described. Judgment was duly entered on the verdict on December 6, 1904, and no appeal has been taken therefrom. Title to the land in question is admitted in David Shoyer, subject to the equities of the said William D. Smith; and it is admitted that William D. Smith fully complied with all the terms of his contract with the said David Shoyer.

The question here presented, and the only one, is—does the verdict obtained by William D. Smith, in the issue to No. 134, May Term, 1904, in common pleas of Greene county, conclude the plaintiffs therein, the grantees named in the deed from David Shoyer, under date of November 4, 1897, from asserting their title to the land under said deed?

No reason is suggested, and none is apparent why it should not have this effect. We do not understand that its conclusiveness upon George Shoyer, the present life tenant, is questioned, since, were his title good, his right of possession would follow and he could maintain ejectment to enforce it.

The suggestion is made, that inasmuch as the other parties defendant in the issue were remainder men, and not in position to assert their title as against the party in possession, the case might be different as to them. This suggestion springs from the supposed analogy between the proceedings contemplated by the Act of June 10, 1893, P. L. 415, and an equitable ejectment action. True, in Ullom v. Hughes, 204 Pa. 305, it is said, referring to this act to quiet title, that the act expressly assimilates the proceeding to an equitable ejectment; but it does not result from this, that the scope and purposes of the act, are to be narrowed by the application of the principles and rules which govern in ejectments. Indeed, in the case just cited, it is expressly said, that the act does not give a new right enforceable only in the prescribed way, but merely a new remedy for a right always existing, to defend title and possession. It is further held, that the old remedies were not done away with by the act, but that the remedy provided was added for still greater convenience in certain cases to which

it could be applied. The purpose of the act as expressed in the enactment, is to quiet title. Before its passage the remedy, in such cases, was by bill in equity, and that a court of equity had jurisdiction to give the same relief that is contemplated by the act cannot be questioned. In Stewart's Appeal, 78 Pa. 88, discussing the rule in equity in such matters, Chief Justice SHARSWOOD says: " The best expression of the rule, it seems to me, is to be found in the opinion of the Supreme Court of Massachusetts, in Martin v. Graves, 87 Mass. 601, by MERRICK, J., ' Whenever a deed or other instrument exists, which may be vexatiously or injuriously used against a party, after the evidence to impeach or invalidate it is lost, or which may throw a cloud or suspicion over his title or interest, and he cannot immediately protect or maintain his right by any course of proceedings at law, a court of equity will afford relief by directing the instrument to be delivered up and cancelled, or by making any other decree which justice or the rights of the parties may require.' "

The equitable proceeding was available not to quiet possession, but title ; and it was never suggested that such remedy could be employed only as against those having a right of entry. It was directed against the adverse title by whomsoever asserted, and its object was to remove such title in some manner appropriate to the end sought.

While, as remarked in Ullum v. Hughes, 204 Pa. 305, equity thus came to the aid of the party in possession, who was threatened by an adverse title, the assistance was limited and not always adequate. Here we find as well the occasion for and purpose of the act of 1893. In Delaware & Hudson Canal Company v. Genet, 169 Pa. 343, both were considered and it is there said of the act, " It was intended to give a party in possession the right and opportunity to institute a proceeding to test his title as against an adverse claimant. At common law the adversary might lie by concealed or quiet, and choose his own time for the contest, subject only to the risk that the statute of limitations might shut him out. The party in possession could do nothing but await the attack. Equity came to his aid by " bills to perpetuate testimony, to quiet title, etc., but this assistance was limited and not always adequate. In this state the Act of May 21, 1881, P. L. 24, gave the party in possession the fur-

ther right, as against an adversary who had once asserted his claim in an ejectment, to rule him to bring his further action or be barred. The party in possession is no longer bound to await the attack, but may act on the offensive and bring on the battle at once."

The general words employed in the act indicate a purpose to provide a remedy for the speedy settlement and determination of all cases where the right of any person in possession of lands "shall be disputed or denied by any person or persons aforesaid." Just what restriction, if any, can be derived from the use of the word "aforesaid," is not apparent; but it is very certain that nothing that precedes it in the text gives any warrant for the restriction here suggested. Accepting the purpose of the act to be what this court, in every case in which it has been considered, has held it to be, the word "aforesaid" as it occurs, can only be considered surplusage and nothing more.

If, then, in the issue tried, the court had jurisdiction of the parties—and upon the facts as they appear in the case stated, we are of opinion that it had—it necessarily results that the parties who were plaintiffs therein and defeated, are concluded with respect to the claim in that issue adjudicated; since the act provides that "the verdict of the jury in such issue shall have the same force and effect upon the right and title, and right of possession of the respective parties in and to the said land as a verdict in ejectment upon an equitable title."

Judgment affirmed.