## Ray v. Guida

*David A. Clarke,* for plaintiff.
*Ivins & Ivins,* for defendant.

MONROE, J., September 10, 1965.—On July 24, 1964, plaintiff and defendant herein entered into a written agreement for the sale by plaintiff to defendant of a lot and house to be constructed thereon. Contained in the printed form of the agreement was the provision:

"This agreement shall not be recorded in the office for the Recording of Deeds or in any other office or place of public record".

Subsequently, on September 17, 1964, defendant caused a copy of the agreement to be recorded in the office for the recording of deeds. The copy recorded had a line drawn through the above provision. Plaintiff brought this action to quiet title against defendant, praying an order directing defendant to have the agreement of sale cancelled of record and, on his failure to do so, that the court direct the recorder of deeds to expunge and cancel the same of record as though it had never been recorded. The complaint alleges that the agreement of sale as recorded creates a cloud on plaintiff's title to the real estate described therein and that the striking out of the provision against the re-

cording of the instrument was without the consent of plaintiff and was a material breach of the contract. Defendant has demurred thereto. The various reasons assigned in support of the demurrer may be summarized as follows: (a) Any agreement which satisfied the recording statutes may be entered of record and cannot be expunged or cancelled of record; (b) the provision which stipulates the agreement shall not be recorded is in contravention of the recording statutes, constitutes a fraud on creditors and prospective purchasers and others who may have an interest in the real estate and, therefore, is against public policy; (c) said provision against recording violates plaintiff's right to give record notice of his interest in the real estate.

There can be no doubt that an agreement for the sale of real property is a recordable instrument. Cf. Dusick v. Morgan, 25 Northumb. 18, 24; Rhines v. Baird, 41 Pa. 256; Ladner on Conveyancing in Pennsylvania, 3rd ed. 119, §5:25. "An executory contract for the sale of realty, the effect of which is to convey an equitable title has been held to be a 'conveyance' or 'transfer' within the recording laws": 8 Thompson on Real Property, 262, §4297. And in Bellas v. McCarty, 10 Watts 13, 25 et seq., it is held that in Pennsylvania the recording acts are applicable equally to legal and equitable titles. An agreement of sale, upon the signing thereof, has the effect of vesting in the vendee what is known as an equitable title to the land: Dusick v. Morgan, supra.

It is the duty of the recorder of deeds to receive and record such instruments as are entitled by law to be filed and recorded: Warish v. McGee, 84 D. & C. 356. If an instrument is recordable and conforms with the requirements of the recording statutes, he is not required to examine it further for possible agreements therein which are intended to control or affect his offi-

cial powers and duties: Compare Warish v. McGee, supra. However, the action of the recorder of deeds in receiving and recording an instrument does not foreclose the power of the court, upon equitable considerations, to direct its cancellation of record. In Stewart's Appeal, 78 Pa. 88, the following quotation from a decision of the Supreme Court of Massachusetts was adopted:

" '. . . Whenever a deed or other instrument exists, which may be vexatiously or injuriously used against a party, . . . or which may throw a cloud or suspicion over his title or interest, and he cannot immediately protect or maintain his right by any course of proceedings at law, a court of equity will afford relief by directing the instrument to be delivered up and cancelled, or by making any other decree which justice or the rights of the parties may require' ".

There can be no doubt that an agreement for the sale of real estate and recording thereof constitutes a cloud upon plaintiff's title, and that equity, in appropriate circumstances, heretofore had jurisdiction to decree its cancellation of record: Goldstein v. Markovitz, 276 Pa. 46; Reilly v. Magee, 272 Pa. 406; Happold v. Espenship, 15 D. & C. 186; Shapiro v. Kazmierski, 283 Pa. 242; Montgomery v. Mahjoubian, 3 D. & C. 833, or relief could have been granted on the civil side of the court by an action to quiet title: Ullom v. Hughes, 204 Pa. 305. The powers which formerly were vested in courts of equity and law have been consolidated in the action at law to quiet title by Pennsylvania Rule of Civil Procedure 1061 et seq. Cf. Goodrich-Amram comments to that rule, and especially comment 1061 (b)-5, wherein appears:

". . . The new action to quiet title now gives jurisdiction on the law side of the court to undertake the removal of every type of cloud on title. It creates jurisdiction to adjudicate every kind of dispute which

the bill quia timet could adjudicate. It removes the last vestige of equitable jurisdiction in these matters and provides a full and complete remedy at law".

At this stage of the proceedings, we cannot say that plaintiff has not alleged a basis for equitable relief in this action.

Defendant has not cited to us any authorities sustaining his position that the provision against the recording of the instrument is, per se, a fraud on prospective purchasers and creditors or is in violation of the recording statutes.

We have not found any decisions of the courts of this State or elsewhere specifically holding that such a provision is fraudulent and contrary to public policy per se. Of course, there may be circumstances when an agreement of sale containing such a provision, if entered into for the purpose of defrauding creditors and others who may have or later have a legitimate interest in plaintiff's real estate, and such persons are, in fact, deceived to their prejudice, would be fraudulent. Such circumstances do not appear in plaintiff's complaint. Recording is only essential to protect by constructive notice any subsequent purchasers, mortgagees and new creditors: Malamed v. Sedelsky, 367 Pa. 353, 358; 26 A. L. R. 1552. The parties to the agreement of sale may agree, inter sese, that the instrument shall not be recorded. The consequences of failure to record may then be visited upon the contracting parties by the purchasers, mortgagees and creditors who have been misled through the application of the preferences granted to them by the various recording laws. As to such persons, the agreement may be invalid, but as between the parties to the agreement, recording is not essential to its validity: Fiore v. Fiore, 405 Pa. 303; Mower v. Mower, 367 Pa. 325, 328. Hence, we cannot say that an agreement between the parties to a recordable instrument is fraudulent per se.

The agreement to withhold the instrument from recording is not such a contravention of the recording statute as requires us to hold that it is so contrary to public policy that it should be stricken down. The failure to record the instrument, whether by agreement or otherwise, would not deprive subsequent purchasers, mortgagees or creditors of the protection granted them by the recording statutes. The primary purpose of the recording statutes is expressed in 26 A. L. R. 1552:

"The object and purpose of the recording acts is to prevent persons who have, in good faith, acquired real property, or some interest therein, from being injured by prior secret or fraudulent sales or encumbrances of the property; so that it is generally held that the failure to record an executory contract for the sale of land, where, by statute, such record is authorized or required, only operates to render the contract invalid as against subsequent purchasers or encumbrancers of the land, who have acquired the land or a lien thereon without knowledge of the contract, in reliance upon the record title; while, as between the parties to the contract, and between subsequent purchasers or encumbrancers who have taken with actual knowledge of the contract, the contract is as valid and enforceable as though it were recorded".

The statutes do not dictate the absolute invalidity of an agreement not to record a recordable instrument. They impose penalties upon the contracting parties for the failure to record, the possible loss of their bargain to the subsequent purchasers, mortgagees and creditors, and the priorities granted to the latter. They thus express the limit of the sanctions that public policy requires. It is not appropriate for us to hold that public policy demands more severe sanctions and say that an agreement not to record is, per se, invalid and unenforceable as between the parties thereto.

The recording statutes are, of course, of benefit to the purchaser in an agreement for the sale of real estate, for the recording is constructive notice of his equitable interest in the property. There is nothing in the pleadings indicating that defendant did not knowingly, voluntarily and for a consideration, agree not to record the instrument and thus waive the benefit to himself of the recording statutes. Generally, a man may waive the benefit of a statute: Elliott v. Lindquist, 356 Pa. 385, 388.

## ORDER

And now, September 10, 1965, defendant's demurrer to plaintiff's complaint is overruled, with leave to defendant to file an answer on the merits within 20 days from the date hereof.

## DISSENTING OPINION

FULLAM, J., September 10, 1965.—I regret that I am unable to agree with the majority position in this case. I am completely in accord with the majority view that the stipulation against recording does not contravene public policy, and that it constitutes a valid and enforceable waiver of the benefits of the recording statutes. But it does not follow that plaintiff is entitled to relief in this action at the present time.

The agreement of sale is still in effect, and there is no basis on the present state of the record to order it cancelled or declare it void. The majority recognizes this, but attempts to do the impossible: remove from the record a valid instrument without declaring the instrument invalid. Notwithstanding the majority's edict, third party searchers of the record will be made aware of the existence of the agreement of sale; of the court's order expunging it from the record; and of the reasons for such action, none of which impair the validity of the agreement itself. In short, by ordering the agreement stricken from the record, the court does a

vain and useless act, which merely enlarges the total record in this matter.

I recognize that defendant has breached one small part of the agreement of sale. At such time as plaintiff can allege and prove that he has been damaged by such breach, plaintiff would be entitled to his remedy. If the agreement remains valid and is completely executed, of course plaintiff would suffer no damage by the recording. On the other hand, if the agreement is terminated or rescinded, then plaintiff would have a right to require defendant to clear the record and, presumably, would have a cause of action for damages if defendant failed to do so. But until such time as plaintiff has been adversely affected by the recording, I see no justification for interference by this court. In effect, the majority is attempting to decree specific performance of one small part of the agreement of sale without any showing of justification for such action on behalf of plaintiff.

For the foregoing reasons, I respectfully dissent.