# Kennedy *versus* Kennedy.

*Jurisdiction of Courts of Equity in Partition.*

1. Courts of equity have jurisdiction in cases of partition: and where there has been an amicable partition by parol of lands, previously held in common or joint tenancy, between parties able to contract and a long acquiescence and possession under it, they will interfere to quiet the enjoyment.

[Kennedy *v.* Kennedy.]

2. But where there has been an attempt at partition, and a division line run, but the owelty of partition necessary to be paid in consequence of the inequality of the division, has not been fixed or agreed upon and paid, a court of equity cannot make a decree for quiet enjoyment in severalty of the land alleged to have been allotted to one, for a complete partition had never been made.

APPEAL from the District Court of *Allegheny county.* In equity.

This was an appeal by David Kennedy from the decree of the District Court of Allegheny county on a bill filed by him against Samuel Kennedy.

The complainant alleged that James Kennedy, by his last will, devised a tract of land, situate in Upper St. Clair township, in Allegheny county, in fee to David Kennedy, the complainant, and Samuel Kennedy, the respondent (describing it); and that, on or about the 4th day of August, A. D. 1845, said David and Samuel amicably agreed upon and made a division, and established a consentable line between them, and allotment thereof to each his proper share in severalty, as shown by a copy of a draft of said division then made for them by L. B. Patterson, attached to the bill, whereby a portion was allotted to the complainant as stated therein, to wit: the part containing fifty-five acres and one perch, and that immediately thereafter said parties went into possession of their respective portions and made fences, and have continued so to occupy and possess the same ever since; and that complainant had made valuable improvements upon his part, &c.

The respondent denied that he and complainant had agreed upon and made such division and consentable line and allotment as alleged by the complainant, and averred the fact to be that said line run by Patterson was merely a temporary line made for the purpose of ascertaining whether they could make a permanent division by said line, by agreement between themselves as to the value of the land and improvements on each side of said line, and by the one paying to the other such sum of money as would make the two parts, with the improvements on the same, respectively, equal in value, and averred that he and complainant never came to any conclusion on the subject, but that said land remained undivided; said parties using the line as a matter of convenience as a temporary line to farm by. He also denied the separate occupancy by the parties of the respective portions, and charged that at the time the alleged line was run it was expressly agreed that said line did not make an equal division of said tract, and that they were, if they could, to make the partition equal by money, and if they could not so agree, then to run a new division line; and that they have hitherto failed so to agree, and no partition of said tract has ever been made between them.

From the testimony produced before the master it appeared that James Kennedy, the father of both the parties, by his last will, dated 19th June 1835, devised the tract of land described in the bill to David and Samuel Kennedy, in the following words:

"It is my will, and I order that my sons David and Samuel take all my property, real and personal, and to be jointly held by them until Samuel arrives at the age of twenty-one years, when, at their pleasure, they are to make an equal division," &c.

Also providing that "out of this estate so bequeathed, I order that they make the following payments to their sister Elizabeth: one hundred dollars; one-half thereof at her marriage, or in twelve months after my death; the other half one year thereafter."

The real estate of which the testator died seised contained one hundred and four acres, one rood and sixteen perches.

After the death of the testator, Samuel having arrived at the age of twenty-one years, a line of division was named by David and Samuel, and, on the 14th day of August 1845, L. B. Patterson a surveyor, surveyed and ran a line for them, under the supervision and direction of both parties, across and through the said tract, for the purpose of making partition of the said tract of land between them, and that both parties were satisfied with the same after it had been run.

It was also established by the testimony that, by agreement between them, David took the part containing fifty-five acres and one perch, on which buildings were erected, and that Samuel took the other part containing forty-nine acres, one rood, fifteen perches; and that previous to and at the time the survey was made, a fence stood upon a part of what was made the division line, and that some two or three years afterward a fence was built upon the remaining portion of said line. It also appeared that for several years after the line was run, and previous to the marriage of David, which was about the year 1847, the whole tract was worked by Samuel; the part taken by him as before stated for himself, and the other part belonging to David on the shares; Samuel and David dividing between them the crops raised on David's part; their several shares being separated and placed in different parts of the barn. Each party was assessed and paid taxes for his particular portion.

David and Samuel lived together in the old mansion-house which was on David's part, their sister Elizabeth keeping house for them until after the marriage of David, when within a year or so David erected another house and moved into it, Samuel and his sister Elizabeth remaining in the old house, where they still reside.

It also appeared that the parties had some understanding or agreement about David paying Samuel the value of the improve-

ments which were upon the part taken by the former, but what the exact arrangement was, and when made, was not apparent from the testimony. It would seem, however, that David was to pay Samuel whatever the improvements might be worth.

It was also shown that David Kennedy and wife, on the 9th day of February, A. D. 1848, at the request of Elizabeth, the sister, conveyed four acres of his portion of the tract to her, in lieu of the one hundred dollars bequeathed to her by her father, out of the estate devised to the said parties, for the purpose of paying the legacy and also making the shares or parcels more nearly equal in value. Both parties assisted in running off this piece for her and in fencing it.

The case was referred to a master, by whose return the foregoing facts were ascertained, and who decided that on the 14th August 1845, David and Samuel having previously agreed upon a division line, did run and fix a line of division as stated in complainant's bill, David taking the part containing fifty-five acres and one perch in severalty, and Samuel taking the other part, containing forty-nine acres, one rood and fifteen perches, and thereafter each held and used his portion in accordance with said division; that the line was intended and made as a permanent and final division of the entire tract, but that there was an arrangement or understanding between the parties, by which David should pay Samuel the value of the improvements upon the portion of the land taken by him, to wit, $900, which had not been done. To this report exceptions were filed by both parties.

The court below dismissed the bill, because, first, the court had no jurisdiction of the subject-matter of the bill, not being a bill for partition under the Act of April 13th 1859, but a bill of *quia timet;* and, second, because the allegations of the bill were not sustained by proof, which were the errors assigned here by the complainant.

*Hamilton & Acheson,* for appellant, cited and relied on Story's Eq. §§ 75–6; Act of April 16th 1845, § 6, Purd. 402; Act of 14th Feb. 1857, § 11, Id.; Stockdale *v.* Ulery, 1 Wright 486; Brightly's Eq. 234; Ireland *v.* Rittle, 1 Atk. 541; Whaley *v.* Dawson, 2 Sch. & Lefr. 367; Knight *v.* Barton, 6 Med. 231; Acts of April 29th 1844, and April 13th 1859, relative to partition in equity; Snively *v.* Luce, 1 Watts 69; Higgs *v.* Stimmel, 3 Penna. Rep. 115; Ebert *v.* Woods, 1 Binns 216; Calhoun *v.* Hays, 8 W. & S. 127; Miles *v.* Miles, 8 Id. 135; Long *v.* Long, 1 Watts 269.

*R. & S. Woods,* for defendant, denied that the court below had jurisdiction of the subject-matter of the bill, insisting that it was within the jurisdiction of the Orphans' Court: citing the Act of

April 30th 1840, Purd. 204; 9 W. & S. 55; 4 Barr 502; Act of 10th April 1849, § 10, Purd. 204; Act of April 14th 1834; Rhoads's Estate, 3 Rawle 420; Merklin v. Trapnell, 10 Casey 42.

The opinion of the court was delivered, October 30th 1862, by STRONG, J.—This is not a bill for partition. On the contrary, it avers that partition has already been made by the agreement of the parties. Its object is rather to obtain a decree for the quiet enjoyment of the land which the complainant alleges became his in severalty by virtue of a former parol partition. Courts of equity have jurisdiction in cases of partition, and, possibly, where there has been long acquiescence and possession under a parol division of lands previously held in common or joint tenancy, equity will quiet the enjoyment of such estates. Such seems to have been the opinion of Lord Hardwicke in Ireland v. Rittle et al., 1 Atkyn's Cases 256. And there are very many cases analogous to bills of peace, in which a chancellor has interfered to quiet the enjoyment of a right, or to establish it by a decree, or to remove a cloud from the title. Indeed, this is one of the well-recognised branches of equitable jurisdiction, though its extent is not clearly defined.

The difficulties in the way of the complainant in this case are found not so much in the jurisdiction of the court as in the failure of proof that there ever was a complete parol partition. Unless there was, the complainant manifestly has no case—no title in severalty, either in law or in equity. It is not enough that the parties *agreed to fix* a line of division between them, and that they actually ran and marked such a line, if it was also a part of the arrangement that owelty should be adjusted. Fixing the amount of owelty was as essential to the partition as was the adoption of the dividing line. In this case all the evidence as well as the report of the master shows that the farm which the parties held in common was not divided equally in quantity or in value. All the buildings stand upon the part which the complainant claims to have been allotted to him, and it was contemplated by both parties that owelty should be agreed upon and paid. What that should be was, however, never determined, and therefore there never was complete partition. All the steps taken were necessarily but experimental, and as insufficient to convert the joint ownership into ownership in severalty, as would be a sale to pass title, without any agreement for the price. In view of the facts, established beyond contradiction, that an equalization of the value of the two parts of the farm was intended to be made by the agreement, and that it never was, it is hard to believe that the division line was run for any other purpose than (as asserted by the defendant) to ascertain whether the parties could make permanent partition and division by said line, by an

ageeement between themselves as to the value of the land and improvements on each side of the line, and by the one paying to the other such sum of money as would make the two parts with the improvements on the same respectively equal in value.   But if not so, the validity of the division is dependent upon an adjustment of owelty, and as that has never been agreed upon, it is not for a court of equity to make a contract for the parties, or in such a bill as this, which is not for partition, to decree how much owelty shall be paid.   The complainant has then no equity to a decree for the quiet enjoyment in severalty of the land which he asserts was allotted to him under a parol partition. Partition has never been made.

> The decree of the District Court, dismissing the bill of the complainant, is affirmed with costs.