# Yonkers & Co., Limited, et al., Appellants, *v.* Sarah W. Warden et al.

*Equity jurisdiction—Bill to remove cloud on title.*

The courts of Pennsylvania have adopted and recognized the equity jurisdiction to remove clouds upon title as fully and as broadly as it is described in the equity text-books and decisions. The rule may be stated as follows: Whenever a deed or other instrument exists which may be vexatiously or injuriously used against a party after the evidence to impeach or invalidate it is lost, or which may throw a cloud or suspicion over the title or interest of the owner and he cannot immediately protect or maintain his right by any course or proceeding at law, a court of equity will afford relief by directing the instrument to be delivered up and canceled or by making any other decree which justice or the rights of the parties may require.

A bill, quia timet, having been filed, praying for the extinction of certain ground rent, the court having found as facts, an apportionment of the ground rent by an agreement, understood by both parties; that plaintiffs were in possession; that they could not maintain a suit at law against defendants; that parties having knowledge of the transaction were few; and that a few years may make proof difficult or impossible and that a cloud existed on plaintiffs' title—such findings warranted a decree declaring the ground rents extinct and it was error to dismiss the bill for want of jurisdiction.

Argued May 4, 1898. Appeal, No. 82, April T., 1898, by plaintiffs, from decree of C. P. No. 2, Allegheny Co., April T., 1896, No. 643, dismissing bill in equity. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Reversed.

Hearing on bill, answer and proofs. Before EWING, P. J.

The facts sufficiently appear from the opinion of the court below.

The first, second and third paragraphs of plaintiffs' bill are true. Each of plaintiffs obtained title through James Wood, who obtained title from John B. Warden and John Alexander. A large tract of land, comprising the entire territory of what is now the Thirty-sixth ward of the city of Pittsburg, with a part of the Thirty-fifth ward, belonged to Ezekiel Harker, who by deed dated September 11, 1822, recorded in deed book,

volume 29, page 360, conveyed the same to West Elliott, reserving a ground rent of $150 per year to said Ezekiel Harker. West Elliott conveyed the land to John B. Warden and John Alexander, subject to this ground rent of $150 per year, and, as stated in the fourth paragraph of plaintiffs' bill, John B. Warden and John Alexander, laid out a plan of lots, known as the Temperanceville plan of lots; and they being the owners, by deed dated March 3, 1839, recorded in deed book, volume 76, page 451, conveyed lot No. 52, together with lots Nos. 19, 20, 29, 30, 40, 49, 50 and 51, in Warden and Alexander's plan, reserving thereout, an annual ground rent of $198 per year, payable $150 on the first day of April, and $48.00 on the first day of October in each year, to James Trunick. Warden and Alexander, by deed of assignment, dated May 10, 1844, recorded in deed book, volume 68, page 178, conveyed said ground rent of $198 to Robert Sterrett, John B. Warden, George McKee and Aaron Frew in trust to pay the ground rent of $150 reserved in the deed of Ezekiel Harker to West Elliott, above referred to, before any part thereof should be claimed by Warden and Alexander; the $48.00 to be retained by Warden and Alexander, John B. Warden being one of the grantors in the deed to James Trunick, above referred to. The testimony shows that, instead of paying to the trustees, payments of the $150 were made directly to Ezekiel Harker during his life, and since his death to his adopted daughter, Mrs. Tucker. And the $48.00 has been paid separately to John B. Warden and John Alexander, or their heirs and devisees, two thirds thereof being paid on the account of the John B. Warden interest, and one third thereof to John Alexander and his representatives.

On December 24, 1861, James Trunick conveyed to one John Hall, lots Nos. 29 and 30, and a part of lot No. 52, and took from Hall a mortgage on the same day for $1,500, due April 1, 1867, with interest at five per cent. By deed dated March 11, 1867, recorded in deed book, volume 214, page 584, James Trunick and wife conveyed to James Wood, through whom plaintiffs claim a part of lot No. 52. On the 3d day of April, 1867, James Trunick, on the margin of the record of the mortgage given to him by John Hall, receipted, acknowledging the payment of $700 on the mortgage, leaving $800 owing thereon, as follows:

" With interest from April 1, 1867. The said $800 is to remain on interest at six per cent, and I now and hereafter will hold the same in trust to pay Warden and Alexander $24.00 on October 1, 1867, and annually thereafter to pay the said Warden and Alexander, or those entitled to the same, $48.00, being the ground rent on lots Nos. 29 and 30, in Warden and Alexander's plan of the borough of Temperanceville."

The conveyance by Trunick to James Wood, and this entry and declaration of trust on the mortgage of John Hall, at the same time, were probably a part of the same general transaction.

The testimony of Mr. Friend and other witnesses shows that from 1867, the $150, payable on account of Ezekiel Harker's ground rent, was paid by James Wood until his death, and has been paid by his estate from that time to the present. So far as the evidence goes—and all of the evidence points to it—James Trunick paid the $48.00, coming to Warden and Alexander, and continued to pay it until the conveyance of lots Nos. 29 and 30 ; and since then the St. James Catholic Church, who erected a building thereon, has paid the $48.00 per year, and continues to pay it up to the present time.

The mortgage given by John Hall remains unsatisfied on the record as to the $800 with interest up to this time.

The evidence of Mr. Friend that he attended to this part of the business for his grandfather, James Wood, and for his grandfather's estate afterwards, and that he never paid, or never knew of any demand or suggestion of a payment from James Wood or his estate, of this $48.00, taken with the testimony of Mr. Bell, the present agent and collector of rents for the trustees of Wm. G. Warden, and with the book kept by Captain Boyd, since deceased, the former agent for Wm. G. Warden, and the fact also which we deem, with all the testimony, competent, that, when the books of the former agent were given to Mr. Bell, he found, pinned on the page on which this account was kept, the following memorandum :

" John Hall to James Trunick. Mortgage dated December 24, 1861, mortgage book, volume 42, page 574. Balance unpaid, $800 ; the interest to meet $48.00 ground rent to Warden and A.," and the admitted fact that the payments were made to John Alexander and his estate from the same source,

and that, so far back as traced in the evidence, was paid by James Trunick, Joseph S. Brown, assignee of James Trunick and the St. James Catholic Church, all seem to us to point to the same conclusion.

We find, then, as a fact, that, as between James Trunick and his grantees, subject to this ground rent of $198, it was apportioned, so that James Wood paid the $150 of the ground rent, charged in favor of Ezekiel Harker, and that James Trunick and his grantees thereafter, paid the $48.00 to Warden and Alexander; that as between James Trunick and his grantees, the ground rent was apportioned, as to how each one was to pay, to wit: James Wood's portion, $150; the others, $48.00 per year; that Warden and Alexander, who reserved the ground rent in their deed to James Trunick, also had apportioned the ground rent, to wit: $150 to be paid to Ezekiel Harker, $48.00 to Warden and Alexander. The evidence also warrants a finding that the parties on each side knew of and understood this arrangement and apportionment. And we also find that for more than twenty-one years, to wit: from 1867, as to the properties described in the first and second paragraphs of plaintiffs' bill, no claim or demand was made for the $48.00 per year, which belonged to Warden and Alexander, or for any part thereof; nor was there any demand made against the said lots, or the land conveyed to James Wood by James Trunick, or against any part of them or the owners for any part of this ground rent of $48.00 per year, and that the representatives of both plaintiffs and defendants, by implication and their acts, have apportioned the ground rents referred to, and as to the properties referred to.

## CONCLUSIONS OF LAW.

There are two serious questions of law in this case. First, under the facts found is the case brought within the provisions of the act of assembly, approved February 26, 1869, P. L. 3, as also of the act of assembly, April 27, 1855, P. L. 368.

The act of assembly of 1855 provides, inter alia, "In all cases where no payment, claim or demand shall have been made on account of, or for any ground rent, annuity, or other charge upon real estate, for twenty-one years, or no declaration or acknowledgment of the existence thereof, shall have been

made within that period, by the owner of the premises, subject
to such ground rent, annuity or charge, a release or extinguish-
ment thereof shall be presumed, and such ground rent, annuity
or charges shall thereafter be irrecoverable.

"Provided that this section shall not go into effect until
after three years from the passage of this Act."

The act of assembly of 1869 provides, inter alia, "The limi-
tation of claims to or demands for ground rents, annuities or
other charges upon real estate, prescribed by the seventh sec-
tion of the act, to which this is a supplement, shall be so taken
and construed as to apply to any part or proportion of such
ground rent, annuities, rent charges or other charges upon real
estate, situate in the commonwealth of Pennsylvania, whether
apportioned by deed or other instrument of writing, or implied
by the acts of the parties, and where the owner or owners of
any part or parts of the premises out of which the said ground
rent, annuity, rent charge or other charge as aforesaid, was
originally reserved, shall not have been called upon for, or
upon whom no claim or demand shall have been made, for pay-
ment of all or any part of said ground rent, annuity, rent
charge, or other charge as aforesaid, for twenty-one years, or
no declaration and acknowledgment of the existence thereof
shall have been made within that period by the said owner or
owners, that a release or extinguishment thereof shall be pre-
sumed, and the same thereafter be irrecoverable out of the part
or parts of the premises, originally subject thereto, upon which
no claim or demand for payment shall have been made as afore-
said; and the court of common pleas, upon petition duly pre-
sented, may decree such extinguishment in the same manner,
upon the same proof, and with the same effects as prescribed
in a certain act, entitled 'An act relating to the extinguishment
of ground rents in the city of Philadelphia,' approved the 28th
day of April, A. D. 1868."

Plaintiffs' counsel contend that the act is constitutional, and
that the facts in this case bring the parties within the provi-
sions of the acts of the assembly recited; and counsel for the
defendants claims that the facts do not bring the case within
the provisions of the act of 1869, and that if they did so, the
act itself is unconstitutional, in that it contravenes the bill of
rights that no ex post facto law or law making irrevocable any

grant of special privileges or immunities shall be passed, and further, that even if the act is constitutional, plaintiffs have not pursued the remedy prescribed by the act of April 28, 1868, to wit: that the owner may apply by a petition to the court of common pleas, of the county in which the land is situate, setting forth the premises, name of the holder or holders of the rent, and so on, and after hearing the court may make a decree, declaring that the said ground rent is released, merged and extinguished, etc.

On the main question of the defendants' contention, that the act of assembly is unconstitutional, because it impairs the contract, we are unable to take his view thereof. The act providing for the extinguishment of the ground rent is simply a statute of limitation. It is no more an impairment of an action or contract than the statute of limitations which can be set up as a good defense in an ejectment, or on a note, or other claim. It is not only within the power of the legislature, but it is in the line of good public policy, to provide such a statute of limitations as to ground rents: Biddle v. Hooven, 120 Pa. 221; Wallace v. Fourth U. P. Church, 152 Pa. 258; Meek's Estate, 161 Pa. 360.

We are of the opinion that the facts of the case bring it within the provisions of the statute, and that the plaintiffs have shown that they would have a good defense in a suit at law as against the defendants.

We are also of the opinion that the bill in equity filed in this case, without objection to that form, is substantially a petition to the court, such as provided for in the statute. The fact that it is more formal, and perhaps gives the defendants a fuller opportunity to controvert the claim of the holder of the property that he is freed from the ground rent, does not make it a remedy different from that provided in the statute.

If this were an open question we would hold that a court of equity has jurisdiction in this case, for the purpose of quieting and clearing the title and rights.

The plaintiffs are in possession. They cannot maintain a suit at law against the defendants. The parties having knowledge of the business and transactions are but few. A very few years may, by deaths, removals or various circumstances, make it difficult to obtain the testimony and proof of some of the

facts now testified to.  It is a cloud on the title.  The general rule of equity would make this a case for equitable jurisdiction; it would be sustained in the English courts and in the United States courts, in equity, but the question seems to have been squarely passed upon in Haines's Appeal, 73 Pa. 169.

The rules laid down on which that case is based have been departed from in different cases since that time.  Were it an open question, or were it not for the rule of stare decisis, we very gravely doubt whether the Supreme Court at the present day would decide as was done in Haines's Appeal.  At the time of that decision the tendency and trend of the court was to exclude equity jurisdiction, and that tendency reached its high-water mark soon thereafter.  Since that time the trend of rulings of the Supreme Court has been to enlarge equity jurisdiction, or at least to bring the rule in Pennsylvania into harmony with the general rules of equity practice in England and in the United States courts.  But the decision stands, and so far as our attention is called to it, has not been doubted in the Supreme Court, and therefore we follow it, and following that decision the bill of the complainants should be dismissed without prejudice to their rights.

Plaintiffs appealed.

*Error assigned* was in dismissing the bill.

*James R. Sterrett*, with him *John L. Ralph*, for appellants.— The court below decided this case upon the theory that plaintiffs were proceeding solely under the Acts of February 26, 1869, P. L. 3, and April 28, 1868, P. L. 1147, when in point of fact they based their right to equitable relief upon three distinct grounds, viz:

1. That equity has jurisdiction to remove the cloud from and quiet the title to their lands.

2. That a court of equity has jurisdiction to determine the question of apportionment of the ground rent, the part apportioned to plaintiffs' lands, whether the same has been barred by lapse of time, etc., and to perpetuate the testimony relating thereto, and having once acquired jurisdiction for these purposes it has power to settle all questions growing out of the controversy; and

3. That the bill not being objected to as to form, is substantially a petition, such as provided for in the act of 1868, and plaintiffs are entitled to the relief given by the act of 1869.

The general principles governing bills quia timet are clearly stated by Mr. Bispham in his Principles of Equity, sec. 575. Among the many authorities in our state, the following are cited as sustaining this principle: Stewart's Appeal, 78 Pa. 88; Dull's Appeal, 113 Pa. 510; Slegel v. Lauer, 148 Pa. 236; McClure v. Fairfield, 153 Pa. 411.

Have the plaintiffs brought themselves within this well established principle? We think they have. The question of apportionment of the original ground rent, and the evidence in support of the facts relied upon to show an apportionment of the same, were in danger of being lost, and if lost, there would be not only danger of future litigation, but that litigation might result injuriously to the plaintiffs. The court below has found that, "The plaintiffs are in possession. They cannot maintain a suit at law against the defendants. The parties having knowledge of the business and transactions are few. A very few years may by deaths, removals, or various circumstances, make it difficult to obtain the testimony and proof of some of the facts now testified to. It is a cloud on the title." If this distinction between Haines's Appeal, supra, and the case at bar is not recognized, it is impossible to reconcile the decision in the former with Dull's Appeal and Slegel v. Lauer, supra, and numerous subsequent decisions of the Supreme Court of this state.

*J. E. McKelvy,* for appellees.—The provisions of the Acts of February 26, 1869, P. L. 3, and of April 28, 1868, P. L. 1147, cannot be invoked by a bill in equity, upon the equity side of the court, under the equity rules. Proceedings under said acts must be by petition upon the law side. A court of equity will not entertain jurisdiction when statutory remedy has been provided: Patterson v. Lane, 35 Pa. 275; Bailey v. Fitzpatrick, 8 Phila. 93.

The acts of assembly are unconstitutional and were so held in Haines's Appeal, 73 Pa. 169, which was approved in Washburn's Appeal, 105 Pa. 480.

OPINION BY PORTER, J., October 10, 1898:

If this proceeding can properly be regarded only as a petition for a decree for extinguishment of a ground rent under the act of February 26, 1869, then the bill was doubtless rightly dismissed on the authority of Haines's Appeal, 73 Pa. 169.

We are not furnished with the testimony taken in the cause but only with the pleadings and the findings of fact by the court below. These clearly show that the bill was more than a mere petition under the act. Its purpose was to remove a cloud upon the plaintiff's title, to utilize testimony which might not be obtainable if delayed in taking, to determine the existence or nonexistence of an apportionment of a ground rent, and to ascertain whether in fact the ground rent was extinguished as to the plaintiff's property either by agreement or by lapse of time.

The learned judge of the court below finds as fact from the testimony taken, that there was an apportionment of the ground rents, and that " the evidence also warrants a finding that the parties on each side knew of and understood this arrangement and apportionment." He further finds that " the plaintiffs are in possession. They cannot maintain a suit at law against the defendants. The parties having knowledge of the business and transactions are but few. A very few years may by death, removals or various circumstances, make it difficult to obtain the testimony and proof of some of the facts now testified to. It is a cloud on the title."

These findings take the case out of the ruling in Haines's Appeal, supra. There the Supreme Court held to be unconstitutional, the act of April 28, 1868, authorizing the court, upon petition, on due proof that a ground rent has been extinguished by payment or presumption of law, to decree extinguishment.

The act of April 28, 1868, is practically the same as the act of February 26, 1869, now under consideration. The ground upon which the decision in Haines's Appeal is based is that the act is in derogation of the right of trial by jury. But Mr. Justice SHARSWOOD, while saying, " An act of assembly cannot vest in a tribunal like a court of chancery acting without a jury, the power to determine upon the legal rights of parties," qualifies by continuing " unless there exists some equitable ground of relief." He further says : " As to the power which has been

principally relied on, to order deeds or instruments to be delivered up and canceled, there is always some ground of equity upon which the chancellor has interposed, besides the mere fact that the instrument cannot be enforced at law. There must be some danger of future litigation when the facts will be no longer capable of complete proof or have become involved in the obscurity of time: 1 Story's Eq. Jur. sec. 705. This is the reason upon which a bill quia timet may be sustained."

Thus has the great jurist left open the door for proceedings such as the one at bar. The learned court below felt constrained to dismiss the bill because of Haines's Appeal, supra, but we think he has overlooked the distinction which brings this case into accord with some of the later cases, otherwise in apparent conflict with it.

Thus the writer of the opinion in Haines's Appeal, himself says in Stewart's Appeal, 78 Pa. 88: "The best expression of the rule, as it seems to me, is to be found in an opinion of the Supreme Court of Massachusetts in Martin v. Graves, 5 Allen, 601, by MERRICK, J. 'Whenever a deed or other instrument exists which may be vexatiously or injuriously used against a party after the evidence to impeach or invalidate it is lost, or which may throw a cloud or suspicion over his title or interest and he cannot immediately protect or maintain his right by any course or proceeding at law, a court of equity will afford relief by directing the instrument to be delivered up and canceled or by making any other decree which justice or the rights of the parties may require.'"

In Dull's Appeal, 113 Pa. 510, 515, Mr. Justice GREEN says that "our own cases show that we have adopted and fully recognized the equity jurisdiction to remove clouds upon title as fully and as broadly as it is described in the equity text books and decisions." See also Kennedy v. Kennedy, 43 Pa. 413; Slegel v. Lauer, 148 Pa. 236, 248.

No further citation of authority on this point need be indulged in. The plaintiff being in possession of the real estate and being able to present proof sufficient to induce the court below to the conclusions he has expressed, comes with a cloud on his title which he has the right to have removed by decree, else were he without remedy to have the title to his property not only good, but made marketable as well.

While this equity jurisdiction should not be exercised save in a clear case, we are of opinion that the findings of the facts by the court below warrant the entry of a decree declaring the ground rents to have been extinguished as to the property of the plaintiffs in the bill.

The decree of the court below is therefore reversed, the bill is reinstated and the record remitted in order that a decree may be entered in accordance with the views herein expressed.